UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Mario Tynes, | C/A No. 8:23-cv-04664-JFA-WSB |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Dr. McCree, Nurse Driver, and Head Nurse Burdette,[1] | |
| Defendants. | |

Mario Tynes ("Plaintiff"), a prisoner proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), the undersigned magistrate judge is authorized to review all pretrial matters and submit findings and recommendations to the district court.

On June 6, 2024, Dr. McRee and Samantha Burdette ("Burdette") filed a Motion for Summary Judgment. ECF No. 87. On June 19, 2024, Lisa Driver ("Driver") filed a separate Motion for Summary Judgment. ECF No. 92. On July 1, 2024, Plaintiff filed a Response to both Motions. ECF No. 95. Dr. McRee and Burdette filed a Reply on July 2, 2024, and Driver filed a Reply on July 8, 2024. ECF Nos. 97; 98. These matters are now ripe for review.

---

[1] Dr. McRee has been improperly identified as Dr. McCree, Samantha Burdette has been improperly identified as Head Nurse Burdette, and Lisa Driver has been improperly identified as Nurse Driver.

1

## BACKGROUND AND FACTUAL ALLEGATIONS

At all times relevant to the Complaint, Plaintiff was an inmate at the McCormick Correctional Institution ("MCCI"), a facility within the South Carolina Department of Corrections ("SCDC"). ECF No. 1-2 at 5. The undersigned takes judicial notice[2] that Plaintiff is serving an eighteen-year sentence for Burglary – 1st Degree, Armed Robbery; Manufacture, Distribution, or Possession of a Controlled Substance Classified in Schedule I, II, or III, 1st Offense: Carrying Prohibited Weapon; and Carrying Concealed Weapon. *See* South Carolina Department of Corrections Incarcerated Inmate Search, https://public.doc.state.sc.us/scdc-public/ (last visited October 17, 2024).

Plaintiff alleges he broke his right hand in an altercation with another inmate on June 9, 2023. ECF Nos. 1; 92-3. Plaintiff contends Dr. McRee saw that his hand was swollen and broken on June 13, 2023. ECF No. 1. He alleges Dr. McRee stated, in the presence of Driver and Burdette, that Plaintiff needed to be sent to "ortho" or the hospital. *Id*. Prior to filing this lawsuit, Plaintiff alleges he wrote to Defendants asking for pain medications and assistance for "the bone [that] is still protruding out." *Id*. According to an affidavit by Driver, the notes documenting Plaintiff's visit with Dr. McRee on June 13th come from a chart update written by a registered nurse on June 15, 2023. ECF No. 92-2 at 2. The nurse reports:

> [Plaintiff] with complaint of right hand pain. [Plaintiff] with an order to have x-ray of right hand due to self injury. [Plaintiff] seen by MD 06/13/2023 and Right hand x-ray, and order to wrap right hand for swelling and discomfort. [Plaintiff] also educated to ice and elevate hand, and IBU 400 mg given for pain/discomfort per standing order.

*Id*. at 6.

---

[2] *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that courts "may properly take judicial notice of matters of public record"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

Between June 15 and September 14, 2023, Plaintiff was seen 16 times by various SCDC staff. ECF No. 87-4 at 65-87. Of these encounters, 13 were rounds in his dorm. *Id*. On August 3, 2023, a "Treatment Team" of six medical professionals assessed Plaintiff after seeing a physical change (weight loss) and signs of depression and recommended he be assessed by a psychiatrist. *Id*. at 76-79. On August 17, 2023, Plaintiff was assessed by a psychiatrist for 45 minutes and gave a detailed history of his past and present mental health condition. *Id*. at 72-74. None of the records from these 16 encounters reflect Plaintiff reporting pain or issues with his hand. *Id*. at 65-87.

On or about September 14, 2023, Plaintiff attempted to submit two grievances about the lack of treatment for his hand. ECF No. 87-10 at 2-3. These grievances were returned for failing to comply with SCDC's grievance policy requiring an informal request for resolution through a "Request to Staff Member". *Id*. On October 2, 2023, Plaintiff submitted a Step 1 grievance, MCCI-536-23. ECF No. 87-13 at 1. Plaintiff claimed to suffer because of a delay in receiving an x-ray for his hand and that his bone had healed wrong, was deformed, and he was still in pain. *Id*. Plaintiff requested "that [he] be seen immediately and [his] hand be fixed surgically also compensated for the deliberate indifference and [his] pain and suffering and transferred to Lee or Broad River or [he] will file a lawsuit[3]." *Id*. Plaintiff's exhaustion of administrative remedies under the SCDC grievance process for this grievance did not occur until February 8, 2024, when the determination was made on the Step 2 of the grievance. ECF No. 87-10 at 3.

On October 23, 2023, Plaintiff was seen by Dr. Bryan Lee Christensen ("Dr. Christensen"), an orthopedic surgeon at The Medical University of South Carolina.[4] ECF No. 87-6 at 4. Dr.

---

[3] The grievance was received on October 2, 2023. Even though it threatens that Plaintiff "will file a lawsuit", he had already done so on September 15, 2023.
[4] Driver claims in her affidavit, ECF No. 92-2 at 3, this referral to Dr. Christensen was originally sent in February of 2023, after Plaintiff had surgery for an unrelated condition on his left wrist. ECF No. 92-2 at 41.

Christensen's notes indicate Plaintiff reported a broken thumb, with decreased pain around the base of the thumb and decreased range of motion. *Id.* Upon Dr. Christensen's examination, he found no ecchymosis, erythema, or edema, along with no obvious sign of deformity. *Id.* Dr. Christensen noted full range of motion of the thumb, "mild tenderness palpation" to the base of the thumb, and "mild discomfort" when performing the CMC grind test. *Id.* Dr. Christensen diagnosed right hand pain, ordered x-rays with a follow-up, and noted that if there was significant injury, surgery may be required. *Id.* at 5.

On November 22, 2023, x-rays were performed, and findings were reported by Dr. Timothy P. Close ("Dr. Close"). ECF No. 87-6 at 3. Dr. Close found no visible fracture, no subluxation, no sclerotic lesion, joint spaces were well maintained, and soft tissues were within normal limits. *Id.* In reviewing Dr. Close's findings, Dr. McRee attested the findings "show a normal x-ray. The x-ray report again showed no fracture. If Plaintiff had a fracture in June, the x-ray would have detected the fracture, and it would have been noted on the x-ray report." ECF No. 87-2 at 2. Dr. McRee attested that based on these findings, Dr. Christensen did not need to follow up with Plaintiff because the x-rays were normal. *Id.* at 3.

On December 12, 2023, Dr. McRee examined Plaintiff for the first time in person since June 15, 2023. ECF No. 87-2 at 2. Plaintiff reported right hand pain. *Id.* Dr. McRee ordered additional x-rays to be done and referred Plaintiff to the orthopedist after the x-rays were completed. *Id.* Dr. McRee saw Plaintiff again on January 16, 2024, and Plaintiff reported pain. *Id.* Dr. McRee informed Plaintiff that an appointment had been scheduled with the orthopedist. *Id.* [5]

---

[5] The record before the undersigned does not contain documents regarding any findings, or lack thereof, of the additional x-rays ordered or appointment scheduled with the orthopedist.

Plaintiff contends Defendants have violated his Eighth Amendment rights by their deliberate indifference to his serious medical need in the treatment of his hand. ECF No. 1-2 at 4. For his injuries, Plaintiff contends that his hand is deformed, he lost mobility in his dominant hand, and he has been suffering in pain for months. ECF Nos. 1; 1-3; 95 at 2. Plaintiff seeks $200,000 for pain and suffering and that SCDC send him to a "hospital/specialist" to fix his hand because it is healing improperly. ECF No. 1-2 at 6.

## APPLICABLE LAW AND ANALYSIS

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that

5

give rise to a genuine issue. *Id*. Under this standard, the existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to withstand a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Section 1983**

Plaintiff's Complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**The Parties' Positions**

Defendants move for summary judgment on multiple grounds. Defendants argue that (1) Plaintiff fails to show a violation of his constitutional rights under the Eight Amendment, (2) Defendants are entitled to qualified immunity, and (3) Plaintiff's claim is barred under the Prisoner Litigation Reform Act ("PLRA") for failing to exhaust his administrative remedies and for failing to state a physical injury under 42 U.S.C. § 1997e(e). ECF Nos. 87-1; 92-1.

In Response, Plaintiff argues Defendants "were deliberately indifferent by their actions or inactions" because he "was ordered to have an X-ray, that X-ray was not completed until approximately 4 months later" and all Defendants failed to follow-up or provide adequate assistance to Plaintiff. ECF No. 95 at 1-2. Plaintiff also concedes his claims are not brought against Defendants in their official capacities. *Id.* at 4-5.[6]

**Administrative Exhaustion**

Defendants argue Plaintiff failed to exhaust administrative remedies as required by the PLRA.[7] ECF No. 87-1 at 12-15. Plaintiff responds by arguing he complied with the PRLA to the best of his abilities, and that, as of the filing of his response, he has successfully completed SCDC's grievance process. ECF No. 95 at 3-4.

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust administrative remedies prior to filing civil actions concerning prison conditions under § 1983 or any other federal law. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by Custis v. Davis*, 851 F.3d 358 (4th Cir. 2017), and "applies to all inmate suits about prison life, whether they involve

---

[6] Because of Plaintiff's concession, the undersigned does not address the arguments raised by Dr. McRee and Burdette for claims against them in their official capacities. ECF No. 87-1 at 19-20.
[7] Driver does not explicitly argue administrative exhaustion, ECF No. 92-1, but did raise the affirmative defense in her Answer. ECF No. 26 at 5. Additionally, Driver requested "the Court apply the defenses and arguments set forth in Dr. McRee's motion [Motion for Summary Judgment] to the benefit of Defendant Driver as if repeated verbatim herein." ECF No. 92-1 at 1.

7

general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court of the United States of America has noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90. This is especially true in a prison context. *Id.* at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016).

Defendants submit an affidavit from Felicia McKie ("McKie"), who is the SCDC Branch Chief of the Inmate Grievance Branch. ECF No. 87-10. McKie testified that Plaintiff submitted three grievance forms as to this incident: MCCI-473-23, MCCI-474-23, and MCCI-536-23. *Id*. at 2-3. Grievance 473 was dismissed for failing demonstrate an attempt at informal resolution as required by SCDC's policy. *Id*. at 2. Additionally, Grievance 474 was dismissed as a duplicate of

Grievance 473 and again failed to show an attempt at informal resolution. *Id*. at 3. Grievance 536 was received on October 2, 2023, and Plaintiff exhausted the remedies available to him under SCDC's policy on February 8, 2024. *Id*. Plaintiff does not dispute McKie's testimony or the supporting documentation provided.

Based upon McKie's undisputed testimony, Plaintiff failed to exhaust his administrative remedies before filing suit. As such, Plaintiffs claims against Defendants are subject to dismissal. *See e.g.*, *Dyke v. McCree*, C/A No. 6:19-cv-1521-TMC, 2019 WL 6700240 at *3 (D.S.C. 2019) (granting summary judgment for failure to exhaust under the PLRA and not reaching the merits of plaintiff's claims); *Wade v. Thomas*, C/A No. 6:11-3470-JFA-KFM, 2013 WL 876829 at *1 (D.S.C. 2013) ("The plaintiff may not exhaust his administrative remedies during the course of the litigation. Rather, these remedies must be exhausted prior to filing suit in federal court.") (citing *Moore*, 517 F.3d at 717).

Because Plaintiff failed to exhaust administrative remedies, the undersigned recommends his claims against Defendants be dismissed.

**Injury under PRLA**

Defendants argue Plaintiff does not show a "physical injury" under PLRA, citing 42 U.S.C. § 1997e(e). ECF Nos. 87-1 at 18-19; 92-1 at 11. Plaintiff contends he has complied with the PRLA to the best of his abilities and leaves this issue up to the Court to determine. ECF No. 95 at 4.

In relevant part, 42 U.S.C. § 1997e(e) provides, that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Although the PLRA does not define physical injury, "courts have held that the 'physical injury' referenced

9

by the Act need not be significant, but must be more than *de minimis*." *Wilson v. United States*, 332 F.R.D. 505, 520 (S.D.W. Va. 2019) (collecting cases); *see e.g.*, *Johnson v. Johnson*, C/A No. 5:20-cv-1664-SAL-KDW, 2022 WL 4163050 at *10 (D.S.C. 2022) (denying summary judgment for failure to state a physical injury under PRLA when plaintiff alleged he suffered a sprain in his neck, loss of hair, and damage to skin); *Blaine v. Fox*, C/A No. 8:07-807-RBH, 2007 WL 1423750 at *1 (D.S.C. 2007) (granting summary judgment for failure to state a physical injury under PRLA when plaintiff alleged unsanitary conditions and overcrowding).

Plaintiff's chief complaint is physical injury to his right hand. The allegations include unnecessary pain, deformity caused by the bone healing improperly, and loss of function. ECF Nos. 1; 1-3. The June 15, 2023, nurses note provides:

> [Plaintiff] with complaint of right hand pain. [Plaintiff] with an order to have x-ray of right hand due to self injury. [Plaintiff] seen by MD 06/13/2023 and Right hand x-ray, and order to wrap right hand for swelling and discomfort. [Plaintiff] also educated to ice and elevate hand, and IBU 400 mg given for pain/discomfort per standing order.

ECF No. 92-2 at 6. This evidence of swelling and pain, in conjunction with the Plaintiff's statements of harm caused by delay in treatment, viewed in the light most favorable to the Plaintiff, is sufficient to establish a question of fact regarding a physical injury under 42 U.S.C. § 1997e(e) of the PLRA.

Therefore, the undersigned does not recommend dismissal of Plaintiff's claims on the basis he allegedly failed to establish a physical injury under the PLRA.

**Section 1983 Claims as to Dr. McRee and Driver**

Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated. *See Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016). When a prison official demonstrates "deliberate indifference" to an inmate's serious medical needs, a

constitutional violation occurs under the Eighth Amendment. *See id*.; *Estelle v. Gamble*, 429 U.S. 97, 101–06 (1976). To state a claim under Section 1983 for deliberate indifference to serious medical needs, a prisoner must show that he had a serious medical need, and that officials knowingly disregarded that need and the substantial risk it posed. *King v. Rubenstein*, 825 F.3d 206, 218–20 (4th Cir. 2016); *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–11 (4th Cir. 2017).

Defendants argue that Plaintiff's alleged injury is not objectively serious enough to constitute a constitutional deprivation. ECF Nos. 87-1 at 1-9; 92-1 at 4-7. In response, Plaintiff contends he suffered pain, lost mobility for months in his dominate hand, and that his bone is dislocated. ECF No. 95 at 2. "Objectively, the inmate's medical condition must be 'serious' — 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). "Where a deliberate indifference claim is predicated on a delay in medical care, we have ruled that there is no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica v. Aylor*, 739 F. App'x. 745, 755 (4th Cir. 2018) (internal quotation and citation omitted). "The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation." *Smith v. James*, C/A No. 8:13-1270-RMG, 2014 WL 2804609, at *9 (D.S.C. Jun. 20, 2014) (citing *Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975)).

The crux of Plaintiff's claim is that Defendants failed to follow up on the first order for an x-ray, which he asserts caused him harm by allowing the bone in his hand to heal improperly. Dr.

McRee attests that if Plaintiff's hand was visibly broken, he would have transferred Plaintiff to the emergency room for immediate treatment. ECF No. 87-2 at 2. Driver attests to the same. ECF No. 92-2 at 2. Dr. Christensen noted Plaintiff's thumb had no obvious sign of deformity. ECF No. 87-6 at 4. Dr. Close found no evidence of fracture in the x-rays he reviewed. ECF No. 87-6 at 3. Moreover, Dr. McRee attests that "it is my opinion that Plaintiff did not have a fracture to his hand in June 2023 and there was no harm or adverse effect to Plaintiff by the fact that the x-ray was not completed until November 22." ECF No. 87-2 at 3. Despite Plaintiff's claims of a protruding and dislocated bone, there is simply no evidence showing Plaintiff suffered such an injury.

Plaintiff's contentions fail to establish any delay in his x-ray resulted in substantial harm in violation of the Eighth Amendment. *See e.g.*, *Barbour v. W. Reg'l Dir. VDOC*, C/A No. 7:08-cv-00598, 2008 WL 5062126, at *5 (W.D. Va. Nov. 26, 2008) (finding the plaintiff's allegations that prison officials delayed an x-ray for months did not constitute deliberate indifference), *aff'd* 324 F. App'x 282 (4th Cir. 2009); *Simmons v. Surry Cty. Sheriff Dep't*, C/A No. 1:09-cv-94, 2010 WL 1418319, at *3 (M.D.N.C. Apr. 2, 2010) (finding the plaintiff failed to allege facts to support a claim of deliberate indifference to serious medical needs based on the defendants' alleged delay in ordering x-rays after the plaintiff fell from a prison transportation van).

To the extent Plaintiff argues medical delay in failing to provide pain management, this argument also fails. Plaintiff reported pain during his June 13th appointment with Dr. McRee and Driver. ECF No. 92-2 at 6. Dr. McRee gave instructions to Plaintiff on how to manage this pain, including proscribing ibuprofen. *Id*. at 2, 6. Despite 16 encounters with various SCDC staff, from June 15th to September 15th, Plaintiff never reported pain. ECF No. 87-4 at 65-87. Instead, it appears that Plaintiff's reports of pain to SCDC staff came by way of his attempt to submit grievance forms on September 14, 2023. ECF No. 87-10 at 2-3. Dr. Christenson noted on October

23rd, that Plaintiff exhibited a "mild tenderness" to palpation at the base of the thumb, "mild discomfort" when performing the CMC grind test, and that Plaintiff reported a decrease in pain. ECF No. 87-6 at 4.

A three-month gap in reporting pain, along with the report from Dr. Christenson, does not constitute the "frequent complaints of severe pain" required to show a sufficiently serious deprivation. *Formica*, 739 F. App'x. at 755. Instead, Plaintiff believes he has a more serious injury and disagrees with the provided course of treatment. *See Smith,* 2014 WL 2804609 at *9; *Sharpe v. S.C. Dep't of Corrs.*, 621 F. App'x 732, 733 (4th Cir. 2015) (noting that "mere disagreement between an inmate and medical staff regarding the proper course of treatment provides no basis for relief" under § 1983).

Defendants also argue they did not act indifferently to Plaintiff's medical requests. ECF Nos. 87-1 at 1-9; 92-1 at 7-8. Plaintiff re-asserts his allegations that Defendants intended to harm him, which is evidenced by the delay in receiving an x-ray and his repeated attempts to get help which he did not receive a response. ECF No. 95 at 1-2.

The subjective component requires more than a showing of medical negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *see also Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). Rather, a prison official must demonstrate deliberate indifference by "completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care." *Bridges v. Keller*, 519 F. App'x 786, 787 (4th Cir. 2013).

Dr. McRee testifies he was not aware that the x-rays were not done and do not know why they were not completed. ECF No. 87-2 at 2. Dr. McRee gave Plaintiff instructions to manage his pain. ECF No. 92-2 at 6. Dr. McRee's opinion is that Plaintiff received appropriate medical care

at MCCI, did not have a fracture to his hand, and there was no harm or adverse effect to Plaintiff by the fact that the x-ray was not completed until November 22, 2023. ECF No. 87-2 at 3. The undisputed facts show that Dr. McRee considered Plaintiff's complaints and provided treatment. Even after Plaintiff initiated this lawsuit, Dr. McRee continued to meet and care for the medical needs of Plaintiff. ECF No. 87-2 at 2.

Driver attests she was with Dr. McRee on June 13, 2023. ECF No. 92-2 at 1. She also treated Plaintiff on October 10th for complaints of a sore throat and cough. *Id*. at 2. She treated Plaintiff again on October 19th to perform an EKG, which Dr. McRee ordered. *Id*. at 2-3. During these encounters, the records reflect Plaintiff did not report any pain with his hand. *Id*. at 3. She also states that she did not know why Plaintiff did not get his x-ray and offered that in her experience, inmates will miss appointments outside the facility for a variety of reasons, including staff shortages to transport or other transport priorities. *Id*. The undisputed facts show Driver assisted Dr. McRee in caring for Plaintiff, and when Plaintiff reported needs to Driver she considered his complaints and provided care.

Plaintiff fails to identify facts under the applicable standard to show either Dr. McRee or Driver acted with deliberate indifference. Beyond asserting he was denied care, his pleadings are void of plausible allegations Dr. McRee or Driver knowingly disregarded any serious medical need. As such, the undersigned recommends granting summary judgment in favor of Dr. McRee and Driver as to Plaintiff's claims.

**Section 1983 Claim as to Burdette**

Burdette argues she is not subject to supervisory liability under § 1983 based on the acts of others. ECF No. 87-1 at 16-18. Plaintiff argues that Burdette failed to oversee and/or supervise medical personnel at MCCI. ECF No. 95 at 4.

Because the doctrine of respondeat superior does not apply to § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms. S*ee Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). In order to proceed on a supervisory liability theory, a plaintiff must show that (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Id*. In *Randall v. Prince George's County*, the Fourth Circuit concluded that, "[u]nder the first prong of *Shaw*, the conduct engaged in by the supervisor's subordinates must be 'pervasive,' meaning that the 'conduct is widespread, or at least has been used on several different occasions.'" 302 F.3d 188, 206 (4th Cir. 2002) (quoting *Shaw*, 13 F.3d at 799). Furthermore, in establishing *Shaw*'s second prong, a plaintiff "[o]rdinarily ... cannot satisfy his burden of proof by pointing to a single incident or isolated incidents ... for a supervisor cannot be expected ... to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id*. (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).

Plaintiff testified in his deposition as follows:

> I attached Nurse Burdette to the lawsuit, because I know as the head nurse she's in charge of supplying us with medicine to subside pain. She's over her nurses. She supposed to make sure they do their job as far as putting certain stuff that the doctor tell them to put in the computer so we'll get the help we need in a timely fashion, and I

15

> feel like she failed to do so, and it left me in pain for over five months until I was able to get it X-rayed.

ECF No. 87-14 at 4. Burdette attests in an affidavit that "after reviewing Plaintiff's medical records, I do not see any occasion where I saw Plaintiff between June 13, 2023, and January 1, 2024. I did not have involvement with his care and had no knowledge that an x-ray had been ordered from Plaintiff." ECF No.87-9 at 2. Additionally, Burdette testifies that inmate requests from the Residential Housing Unit[8] Plaintiff was housed in were handled by someone other than herself. *Id*. Plaintiff advances a theory of liability against Burdette based on her position of authority, which fails to satisfy any of the *Shaw* elements necessary to establish supervisory liability.

As such, the undersigned recommends the district court dismiss Plaintiff's § 1983 claim against Burdette.

**Qualified Immunity**

Defendants argue that even if Plaintiff were able to sustain a § 1983 claim against them, they are otherwise entitled to qualified immunity. ECF Nos. 87-1 at 9-12; 92-1 at 9-11. Plaintiff argues Defendants are not entitled to qualified immunity based upon the factual allegations he has made. ECF No. 95 at 1-3.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*. To determine whether qualified

---

[8] Plaintiff was transferred to Residential Housing Unit in June 2023. ECF Nos. 87-4 at 27, 36.

immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Because Plaintiff has failed to meet his burden of showing a constitutional violation occurred, the undersigned recommends Defendants are entitled to qualified immunity as to Plaintiff's constitutional claims.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the undersigned recommends that Defendants' Motions for Summary Judgment be granted. ECF Nos. 87; 92.

IT IS SO ORDERED.

s/William S. Brown<br>
United States Magistrate Judge

October 17, 2024
Greenville, South Carolina


*The attention of the parties is directed to the important notice on the following page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>Robin L. Blume, Clerk
>United States District Court
>250 East North Street, Suite 2300
>Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).